IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-173

Filed 4 June 2025

Craven County, No. 19CVS001309-240

H/S NEW BERN, LLC, Plaintiff,

v.

FIRST BERKSHIRE PROPERTIES, LLC, Defendant.

Appeal by plaintiff from judgment entered 29 May 2023 and cross-appeal by defendant from order entered 21 August 2023, both by Judge Joshua W. Willey, Jr., in Craven County Superior Court. Heard in the Court of Appeals 29 January 2025.

> *Hull Property Group, LLC, by John M. Markwalter, and Davis Hartman Wright PLLC, by I. Clark Wright, Jr., for plaintiff-appellant/cross-appellee.*
>
> *White & Allen, P.A., by John P. Marshall, for defendant-appellee/cross-appellant.*

DILLON, Chief Judge.

Defendant First Berkshire Properties, LLC, and Plaintiff H/S New Bern, LLC, own adjacent retail properties that have historically been part of the same shopping center. Each has appealed from separate orders entered following a bench trial.

Plaintiff brought this action alleging Defendant was essentially trespassing based on stormwater runoff from Defendant's tract into a retention pond located on Plaintiff's tract. Plaintiff appeals from a judgment entered at the conclusion of the trial awarding it only $1,000.00 in nominal damages for Defendant's trespass.

Defendant appeals from a separate order requiring Defendant to build a stormwater retention pond on its own land.

## I. Background

Plaintiff and Defendant own adjacent tracts that were developed decades ago by their predecessors in interest as part of the same shopping complex. Plaintiff owns a 34.45-acre parcel containing the New Bern Mall. Defendant owns a 5.183-acre parcel, upon which a K-Mart store was developed immediately adjacent to the Mall. Defendant's parcel is surrounded by Plaintiff's parcel.

In the late 1970s, the parties' predecessors in interest entered into a Two-Party Construction, Operation and Reciprocal Easement Agreement (the "COREA") as the Mall and K-Mart were being developed.

Pursuant to the COREA, portions of both Plaintiff's Mall parcel and Defendant's K-Mart parcel were to be developed and used as roads for ingress and egress from the public road and as parking lots and walkways, to be available for use by *all* shoppers. (That is, K-Mart shoppers could use the portion of the parking lot located on the Mall parcel, and vice versa.) Also, a portion of Plaintiff's parcel was developed as a retention pond to capture stormwater runoff from *both* Plaintiff's Mall parcel and Defendant's K-Mart parcel.

Under the COREA, Plaintiff was obligated to maintain *all* such "common" areas on both parcels *in exchange for* Defendant and other property owners paying

Plaintiff a monthly fee (the "Common Area Provision"). Under the terms of the COREA, the exterior common area included all retention ponds.

By its terms, the COREA expired in September 2019 and was not renewed.

Plaintiff commenced this action in 2019 seeking, in relevant part, damages for trespass based on the stormwater from Defendant's parcel that continued to flow onto Plaintiff's tract and into Plaintiff's retention pond after Defendant's contractual right to use the pond under the COREA had terminated.

During the litigation, Defendant admitted to the trespass, though Defendant disagreed as to the amount of damages Plaintiff was seeking for the trespass. Also, Defendant consented to an order being entered directing it to develop a retention pond on its own tract to handle the stormwater accumulating on Defendant's tract.

In May 2023, at the conclusion of the bench trial, the trial court entered its judgment awarding Plaintiff $1,000.00 in nominal damages for trespass for Defendant's unauthorized use of Plaintiff's stormwater retention pond. The trial court indicated that it would enter a separate order concerning Defendant's obligation to take action to handle the stormwater accumulating on Defendant's tract. Plaintiff noticed its appeal from the May 2023 judgment, based on the small verdict.

In August 2023, after Plaintiff noticed its appeal from the May 2023 judgment, the trial court entered its separate order, directing Defendant to take certain actions on its land to handle accumulating stormwater. Defendant separately noticed its appeal from that August 2023 order.

II.    Analysis

In this opinion, we address both Plaintiff's appeal and Defendant's cross-appeal in turn below.

A.  Plaintiff's Appeal

Plaintiff appeals from the May 2023 judgment in which the trial court awarded a mere $1,000.00 in nominal damages for Defendant's admitted trespass based on Defendant's continued reliance on the retention pond on Plaintiff's tract to handle the stormwater from Defendant's tract.

On appeal, Plaintiff argues the trial court erred in relying on *Bishop v. Reinhold*, 66 N.C. App. 379 (1984), because *Bishop* dealt with a continuing trespass, whereas the trespass here is an intermittent/renewing/recurring trespass. *See Galloway v. Pace Oil Co.*, 62 N.C. App 213, 217 (1983) ("[I]f water is not diverted to a person's land so that it is permanently there, it is not a continuing trespass."); *Duval v. Atl. Coast Line R.R. Co.*, 161 N.C. 448, 449 (1913) ("The injury caused by wrongfully ponding or diverting water on the land of another, causing damage, is regarded as a renewing rather than a continuing trespass.").

Because the present case deals with a *recurring* trespass, Plaintiff argues the trial court should have measured damages according to other cases that dealt with recurring trespasses, namely *Phillips v. Chesson*, 231 N.C. 566 (1950), and *Casado v. Melas Corp.*, 69 N.C. App. 630 (1984).  However, those cases are not clear as to how to measure damages for recurring trespasses.  In *Phillips*, our Supreme Court stated

that damages for recurrent trespasses should *not* be measured based on diminution in market value, but the Court declined to instruct as to how damages for recurring trespasses *should* be measured. 231 N.C. at 571. Rather, the Court stated that "[v]arious other rules are applied, such as [1] diminished rental value, [2] reasonable costs of replacement or repair, or [3] restoring the property to its original condition with added damages for other incidental items of loss[.]" *Id.*

Here, Plaintiff failed to present evidence for any of these potential measurements. Plaintiff put on no evidence of diminished rental value due to Defendant's use of the pond. And Plaintiff similarly failed to present evidence of the costs to replace or repair the pond or restore the pond to its original condition. We note the following finding of fact by the trial court:[1]

> Photographic evidence established the existence of damage to pavement and curbing as well as minor erosion around the pond. However, Plaintiff failed to establish a causal relationship between the damage and Defendant's trespass. The damage was no worse than in other areas of [the road bordering the retention pond] and the pond which were prone to flooding. Moreover, even if a causal relationship could be established, Plaintiff failed to offer any evidence of the cost of the repairs shown in the photographs.

Under a theory that it would take a one-acre stormwater retention pond to

---

[1] When a party appeals the trial court's findings of fact from a bench trial, the contested findings are conclusive on appeal if supported by any competent evidence. *See Cherry Cnty. Org. v. Sellars*, 381 N.C. 239, 251–52 (2022) (citation omitted). We conclude this finding of fact is supported by competent evidence and, thus, conclusive.

retain the surface water generated by Defendant's Parcel, Plaintiff offered evidence showing the rental value of *one acre of Plaintiff's undeveloped real property within Plaintiff's Parcel*. But that evidence is not relevant to the damages issue here. Here, the question is the rental value of the property actually occupied—not the rental value of a hypothetical new property. It is Plaintiff's burden to show how it was damaged, which Plaintiff failed to do here. *See Olivetto Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 547 (1987). Accordingly, the trial court only awarded nominal damages.

Plaintiff did attempt to put on evidence, including expert testimony, to prove its damages and argues on appeal that the trial court erred in not allowing much of this into evidence. Specifically, Plaintiff attempted to offer evidence that Defendant would need a one-acre retention pond to handle its stormwater, that the value of one acre of land was about $116,700.00; that it would cost $750,000.00 to construct a one-acre retention pond to handle stormwater; and that it would cost about $2,700.00 per month to rent an acre of land. However, none of this evidence is relevant to establish Plaintiff's *compensatory* damages: The evidence does not show the "diminished rental value" of *Plaintiff's* tract caused by Defendant's use of Plaintiff's retention pond; the "reasonable costs of . . . repair" for damage to Plaintiff's retention pond caused by Defendant's stormwater runoff; or the cost to "restor[e] [Plaintiff's] property to its original condition[.]" *Phillips*, 231 N.C. at 571.

That is not to say that Plaintiff's evidence would not be relevant to establish Defendant's liability for *punitive* damages if Plaintiff otherwise showed it was

entitled to an award of punitive damages. Indeed, one aspect of property ownership is the right to exclude others from its use. *See Hildebrand v. S. Bell Tel. & Tel. Co.*, 219 N.C. 402, 408 (1941) (recognizing the right to exclude as an integral aspect of property ownership). And evidence of what Defendant would have to pay to develop or rent its own retention pond is evidence of the minimal punitive damage award which would deter Defendant or similar parties in Defendant's position from trespassing. For instance, in a case studied by many first-year law students, the Wisconsin Supreme Court upheld a jury's punitive award of $100,000.00 against a defendant who trespassed across the plaintiff's property to deliver a mobile home to another property to avoid a more costly delivery route, reasoning:

> [The defendant's] intentional trespass reveals an indifference and a reckless disregard for the law, and for the rights of others. . . . We are further troubled by [the defendant's] utter disregard for the rights of [the plaintiff]. Despite numerous unambiguous refusals by [the plaintiff] to allow [the defendant] access to their land, [the defendant] delivered the mobile home across [the plaintiff's land].
>
> Furthermore, . . . [the defendant] acted deviously. [After repeated assuring the plaintiff that it would not trespass to deliver the mobile home, the defendant's manager told his employees] to use any means to deliver the mobile home. . . .
>
> We feel certain that the $100.000 [punitive damage award, notwithstanding the fact that the plaintiff suffered only nominal damages otherwise] will serve to encourage [the defendant to obey the law in the future] by removing the profit from the intentional trespass.

*Jacque v. Steenberg Homes Inc.*, 563 N.W.2d 154, 164−65 (Wisc. 1997).

In North Carolina, our General Assembly has provided that punitive damages may be awarded "in an appropriate case . . . to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C.G.S. § 1D-1. And our Court, quoting our Supreme Court, has held that an award of punitive damages is appropriate based on a trespass claim " 'where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evinces a reckless and wanton disregard of plaintiff's rights[.]' " *Huberth v. Holly*, 120 N.C. App. 348, 355 (1995) (quoting *Van Leuven v. Akers Motor Lines, Inc.*, 261 N.C. 539, 546 (1964).

In this present case, Plaintiff did seek punitive damages. However, the trial court made no award for punitive damages. And Plaintiff has made no argument on appeal that it was entitled to any punitive damages award. Accordingly, we hold that the trial court did not reversibly err in not considering the evidence of damages it sought to offer. And we affirm the May 2023 judgment awarding Plaintiff $1,000.00 in nominal damages.

### A. Defendant's Cross-Appeal

During the trial, Defendant represented to the trial court that it would begin the process of constructing a stormwater retention pond on its own tract and would take any other necessary actions as soon as reasonably possible. Defendant stated that it would be willing to join in a consent order; however, Plaintiff and Defendant

failed to reach any definitive agreement. In August 2023, after Plaintiff had noticed an appeal from the May 2023 judgment and following a hearing regarding injunctive relief, the trial court entered an order titled "Order Addressing Injunctive Relief." This was not a consent order. One provision in the order requires Defendant to remove *all existing impervious surfaces* on its property and plant suitable grass cover within forty-five days. Defendant appeals this provision.

One could argue that the trial court lacked jurisdiction to enter the August 2023 order, as Plaintiff had already noticed an appeal from the May 2023 judgment. And, normally, the notice of an appeal divests the trial court of jurisdiction to do anything. *See Bower v. Hodge Motor Co.*, 292 N.C. 633, 635 (1977). However, our Court has held that an appeal from a non-appealable order does not divest the trial court from acting in the matter. *RPR & Assocs., Inc. v. Univ. of N. Carolina-Chapel Hill*, 153 N.C. App. 342, 347 (2002).

Here, Plaintiff's appeal was from an interlocutory judgment, as the trial court had indicated that it was still to rule on whether to grant injunctive relief. Therefore, based on our Court's decision in *RPR & Assocs.*, we must conclude that the trial court had jurisdiction to enter the August 2023 order.

Turning to the merits of Defendant's appeal from the August 2023 order, Defendant only challenges the portion of the order (paragraph 2 of that order) requiring it to remove all existing impervious surfaces on its parcel and plant suitable grass cover on the entire parcel. Defendant has not appealed the other provisions in

that order which essentially direct Defendant to take action to build features on its property preventing its stormwater from escaping onto Plaintiff's property. After careful review of the record, we agree with Defendant that the trial court erred in requiring Defendant to remove all its impervious surfaces, as there was insufficient evidence showing that such action was appropriate. Accordingly, we reverse paragraph 2 of the August 2023 order but affirm it in all other respects.

## III.    Conclusion

We affirm the trial court's May 2023 judgment. We affirm in part and reverse in part the trial court's August 2023 order.

AFFIRMED IN PART; REVERSED IN PART.

Judges STROUD and ZACHARY concur.